UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
**FILED**
OCT 18 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**CIVIL ACTION NO. 2005-66 (WOB)**

KIM HOUSEMAN                                                PLAINTIFF

VS.                MEMORANDUM OPINION AND ORDER

DPI FOOD PRODUCTS, INC.                                     DEFENDANT

On September 1, 2005, oral argument was held on defendant's motion to dismiss (Doc. #5) and plaintiff's response thereto (Doc. #7). Plaintiff was represented by Mark Byrne and defendant was represented by John Sheller. Official court reporter Joan Averdick recorded the proceedings. The court ordered the parties to file supplemental briefs on the issue of personal jurisdiction. The parties have filed their respective briefs.

## FACTS

Prior to June 2001, plaintiff worked for Tree of Life in Kentucky. While working for Tree of Life, a Georgia recruiting firm retained by the defendant contacted plaintiff and asked him if he would be interested in employment with the defendant DPI Food Products, Inc. (DPI) as the Vice President of Sales and Marketing. Plaintiff indicated that he would be interested and the recruiter arranged for DPI to talk to plaintiff about the position.

From March to May 2001, plaintiff had approximately 10 - 15

1

telephone conversations with representatives of DPI about employment with their company. The plaintiff was in Kentucky, usually at his residence in Edgewood, while these conversations took place. The president of DPI, Jerre Snyder, conducted a phone interview with the plaintiff that culminated with plaintiff being offered the job at DPI.

On May 1, 2001, Jerre Snider faxed a letter to plaintiff, at his home, offering him the position. Plaintiff accepted the offer of employment by signing the letter and returning it to DPI. On June 4, 2001, plaintiff began working for DPI in Colorado. Shortly thereafter, he moved his family from Kentucky to Colorado.

Plaintiff alleges that he worked for DPI for several months and that during that time he received only positive reviews. On October 2, 2001, however, Jerre Snyder, his immediate supervisor, met with him and gave him a list of issues he believed plaintiff needed to improve upon. (Complaint ¶ 9, Ex. 2).

Plaintiff responded to Jerre Snyder's list of issues with an undated document that outlined why plaintiff believed Jerre Snyder's assessment was inaccurate. (Complaint ¶ 9, Ex. 3). On October 5, 2001, 3 days after plaintiff's review, Jerre Snyder terminated the plaintiff. (Complaint ¶ 10).

Plaintiff argues that he was not given any warning that he

2

was in danger of losing his job and he believes that he has been treated differently than other employees. He asserts that he had a three-year contract with DPI and that DPI breached that contract by firing him after just four months of employment. Plaintiff also asserts that DPI considered his age, 54, when it decided to terminate his employment.

## ANALYSIS

The defendant argues that the court lacks personal jurisdiction over it because it does not have sufficient contacts with Kentucky. The plaintiff counters by arguing that this court has jurisdiction over DPI because DPI purposely availed itself of the Kentucky forum when it recruited, hired and contracted with the plaintiff in Kentucky.

A party asserting *in personam* jurisdiction bears the burden of showing that such jurisdiction exists. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). "When however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Id.* at 1262. To defeat such a motion, the plaintiff need only make a prima facie showing of jurisdiction. *Id.*

Furthermore, a "court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking

3

dismissal." *Id.* Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. *Id.* However, this does not require a court to ignore undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) (citation omitted).

In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists over a nonresident subject to the limitations of the Due Process Clause of the Fourteenth Amendment. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)(citation omitted); *see also Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The defendant's connection with the forum state must be such that it should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

4

Jurisdiction may be found to exist either generally, where a defendant's conduct is "continuous and systematic" within the state, or specifically, where the subject matter of the suit arises out of or is related to the defendant's contacts with the forum. *Nationwide Mutual Ins. Co. v. Tryg International Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996).

Plaintiff does not contend that the defendant's connection with Kentucky is of a "continuous and systematic" nature such that general jurisdiction exists. In fact, there are no allegations that the defendant conducts business, maintains employees or offices, or is even registered to do business in Kentucky. Instead, the plaintiff argues that the defendant's specific conduct in recruiting and hiring him subjects the defendant to specific jurisdiction in Kentucky.

Kentucky's long-arm statute has been interpreted to extend to the limits of due process. *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1125 (6th Cir. 1982). Therefore, the two inquiries are merged, and the court need only determine whether the assertion of personal jurisdiction over the defendant violates constitutional due process.

The Sixth Circuit has established a three-part test for determining whether a nonresident defendant may be subject to personal jurisdiction consistent with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a

5

consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The "sine qua non" of personal jurisdiction is the purposeful availment factor. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998). Under this factor, the defendant must purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Id.* "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Nationwide Mutual Ins. Co., V. Tryg International Ins. Co.*, 91 F.3d 790, 795 (6th Cir. 1996)(*quoting Burger King Crop. V. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The plaintiff asserts jurisdiction is proper in Kentucky because he was living in Kentucky when he was recruited for the position by an agency retained by the defendant, the defendant called him numerous times at his home, the defendant faxed him the employment contract to his home, and he signed the employment contract while he was in Kentucky.

The Supreme Court has stated, however, that the existence of a contract with a citizen of the forum state, standing alone,

6

will not suffice to confer personal jurisdiction over a foreign defendant. *Burger King*, 471 U.S. at 473. Instead, the prior negotiations, contemplated future consequences, terms of the contract, and the parties' course of dealing must all be evaluated to determine if the defendant purposefully availed itself of the privilege of doing business in the forum state. *Id.* at 479.

In the case at bar, it is undisputed that the defendant retained the services of SBB & Associates, a recruiting firm located in Georgia, to assist it in finding a qualified candidate to fill its vacancy for a Vice President of Sales and Marketing. SBB & Associates contacted the plaintiff in Kentucky to inquire whether he was interested in the vice president position with the defendant in its Colorado office. The plaintiff told SBB & Associates that he would be interested in the position.

Based upon plaintiff's interest in the position, SBB & Associates provided plaintiff's name and number to the defendant. The defendant followed up by contacting the plaintiff at his home in Kentucky. After plaintiff had approximately 10 to 15 phone conversations with different representatives of the company, Jerre Snyder, president of the defendant, offered plaintiff the position. The plaintiff accepted the offer. Snyder followed up this conversation by faxing a letter to the plaintiff outlining the terms of employment and requesting that the plaintiff sign

7

the document and return it to the defendant in Colorado. The plaintiff signed the document and returned it to the defendant. This is the extent of the defendant's contacts with Kentucky.

Under similar facts, the Sixth Circuit held that personal jurisdiction could not be asserted against an employer because its contacts with Ohio were random, fortuitous and attenuated and thus, did not comply with the requirements of due process. *Conti v. Pneumatic Products Corp.*, 977 F.2d 978 (6th Cir. 1992). *See also Condon v. Flying Puck, LLC.*, 35 Fed. Appx. 173, 174, No. 17959 (6th Cir. 2002).

In *Conti*, the plaintiff responded to an advertisement for a directory of recruiting firms. The directory had a listing for a recruiting company in Florida called Management Recruiters of Lake County, Inc. The plaintiff sent his resume to Management Recruiters and they placed it in a file for unsolicited resumes.

Several months later, the defendant company asked Management Recruiters to find a candidate for its position of Vice President of Engineering for its Florida office. Management Recruiters contacted the plaintiff and then forwarded his resume to the defendant. Management Recruiters made several phone conversations to plaintiff on defendant's behalf and the defendant sent the plaintiff plane tickets to visit its facilities in Florida. The defendant offered plaintiff the position. The plaintiff requested that he be permitted to start

8

employment a month earlier than requested and he worked the first month, while living in Ohio, preparing for his move to Florida. A month later, the plaintiff moved to Florida. After four months of employment, plaintiff's position was eliminated and he was terminated.

The plaintiff brought suit in Ohio federal court against the defendant company for breach of contract, fraudulent misrepresentation, promissory estoppel and breach of fiduciary duty. The district court granted defendant's motion to dismiss for lack of personal jurisdiction because it found that exercising jurisdiction over the defendant would offend the traditional concepts of fair play and substantial justice embodied in the Due Process Clause.

The Sixth Circuit affirmed, finding that the "defendants' contacts with Ohio were random, fortuitous, and attenuated, and therefore do not meet the first part of the *Mohasco* test." *Id.* at 982. The court found personal jurisdiction lacking despite the fact that defendants had mailed material to the plaintiff in Ohio, had communicated with the plaintiff in Ohio, had contract negotiations with the plaintiff in Ohio, had mailed the employment letter to the plaintiff in Ohio, and permitted the plaintiff to work in Ohio for one month. Instead, the court found the crucial issue was that the defendants did not purposefully recruit an Ohio resident to fill its Florida

9

position. The court found that the defendant company retained a local recruiting firm that plaintiff just happened to have sent a resume. Thus, defendants learned of the Ohio resident's interest in its position due to the unilateral action of the plaintiff.

Similarly, in the case at bar, the defendant did not set out to recruit a Kentucky resident to fill its position. Instead, the recruiting firm retained by the defendant contacted the plaintiff, the plaintiff expressed his interest in the position and consented to having his information sent to the defendant. Upon receipt of plaintiff's information, the defendant made phone calls and sent an employment letter to the plaintiff in Kentucky. The contemplated future consequences of both parties was that the plaintiff would move to and be employed by the defendant in Colorado. The terms of the contract were to be carried out in Colorado. Thus, as in *Conti*, the defendant's contact with Kentucky was random, fortuitous and attenuated and does not meet the purposeful availment element under *Southern Machine Co.*

Plaintiff attempts to distinguish *Conti* by arguing that in *Conti* it was the plaintiff's unilateral conduct in sending his resume to the recruiting firm that brought the defendant into the forum, whereas in the case at bar, the recruiting firm solicited the plaintiff. Nevertheless, upon solicitation by the recruiter, the plaintiff expressed his interest in the position and presumably authorized the recruiter to submit his information to

10

the defendant.

Lastly, plaintiff argues that the issues in *Conti* dealt with misrepresentations of the recruiter and that the recruiter's conduct is not at issue in the case at bar. The court in *Conti* stated, however, that the issue it was considering was not what acts of the recruiter the employer was liable for, but whether any acts by either the recruiter or the employer demonstrated that they purposefully availed themselves of the privilege of acting in Ohio. The court found that neither defendants' actions demonstrated the purposeful availment element. Accordingly, plaintiff's attempt to distinguish *Conti* is unsuccessful.

The plaintiff argues that the facts at bar are similar to those of *Cole v. Miletti*, 133 F.3d 433 (6th Cir.), *cert. denied* 525 U.S. 810 (1998). In *Cole*, the plaintiff, an Ohio resident, was an investor in a California corporation established by the defendant, a California resident, to distribute a film the defendant co-produced. To fund his investment, the plaintiff obtained a loan. When the film was unsuccessful, the defendant offered to buy plaintiff's shares of the corporation. Plaintiff's counsel drafted an agreement and forwarded it to the defendant. After several phone conversations and an exchange of correspondence, the parties executed the agreement, in their respective states, whereby the defendant agreed to repay plaintiff's loan.

11

The defendant failed to repay the loan. The plaintiff continued to make periodic payments to the bank until the bank sued to recover the balance. The plaintiff brought suit against the defendant for breach of contract. The magistrate judge found personal jurisdiction existed and entered final judgment for the plaintiff.

The defendant appealed arguing that personal jurisdiction did not exist. The court found that "when a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole*, 133 F.3d at 436.

*Cole* is distinguishable from the facts at hand because the contract at issue here did not create a continuing obligation in Kentucky. Instead, the contract created an obligation in Colorado inasmuch as it contemplated plaintiff's relocation to Colorado and his employment there. The court does not find that the letter/contract at issue in this case created any continuing obligation in Kentucky.

The court finds that the defendant's contacts with Kentucky were random and fortuitous. The mere fact the plaintiff lived in Kentucky when he was recruited by the recruiter and had discussions with the defendant about employment in Colorado is

12

insufficient to meet the purposeful availment element of the *Southern Machine* Test. Therefore, personal jurisdiction is lacking.

The court being sufficiently advised,

**IT IS ORDERED** that the defendant's motion to dismiss (Doc. #5) be, and it hereby is **GRANTED**. This matter be, and it is, hereby **dismissed without prejudice** and stricken from the docket of this court. A separate Judgment shall enter concurrently herewith.

This 18th day of October, 2005.

_____
**WILLIAM O. BERTELSMAN, JUDGE**